UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES LINDSAY,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br> AMERICAN GENERAL LIFE &  )<br> ACCIDENT   INSURANCE  )<br> COMPANY, et al.,  )<br>  )<br>  Defendants.  )  | CV 01-BU-0477-E<br><br>**ENTERED**<br><br>MAR 1  2001 |

## Memorandum Opinion

Plaintiff James Lindsay originally filed this action in the Circuit Court of Clay County, Alabama, on January 9, 2001, naming as defendants American General Life & Accident Insurance Company, Independent Life & Accident Insurance Company (hereinafter referred to collectively as "American General"[1]), and fictitious parties. American General claims it was served on January 23, 2001. On February 22, 2001, American General filed a notice of removal in this Court (Doc. No. 1). In removing, American General invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332, asserting that the parties are completely diverse

---

[1] According to the notice of removal, Independent Life & Accident Insurance Company no longer has any independent existence since it was merged into American General Life & Accident Insurance Company on December 31, 1997.

and that the amount in controversy requirement is satisfied. American General has simultaneously filed motions to dismiss, or, in the alternative, for a more definite statement (Doc. No. 2); to allow it to conduct limited discovery into the issue of the jurisdictional amount in controversy (Doc. No. 3); and for a stay in the case pending a decision on the motion to reassign the case or, in the alternative, to allow it 30 days to submit further evidence relevant to the amount in controversy requirement (Doc. No. 5). On February 26, 2001, Plaintiff filed a motion to remand the case to state court, arguing that American General has not satisfied its burden to show that the amount in controversy is met. (Doc. No. 6).

Based on the submissions of the parties, the Court concludes as follows: American General's motion to allow it to conduct limited discovery into the amount in controversy is due to be DENIED; its order for a stay pending a decision on the motion to reassign the case or to allow it 30 days to submit further evidence on the amount in controversy is due to be DENIED; Plaintiff's motion to remand is due to be GRANTED as the Court concludes that it lacks subject matter jurisdiction because American General has failed to show that the amount in controversy is met; and the Court will not rule on American General's motion to dismiss or, in the alternative, for a more definite statement, which shall be terminated by the Clerk of this Court.

## I. BACKGROUND

Plaintiff brings numerous claims, all based upon Alabama state law, against American General premised upon its alleged "decades-old practice of race-based underwriting, where African-American citizens were charged higher premiums than whites for similar life and burial insurance policies." Complaint ¶ 4. Plaintiff's

complaint lists ten specific policy numbers, and the years of alleged purchase, for which Plaintiff claims he was charged racially discriminatory premiums. Id. ¶ 9. Among the causes of action listed in Plaintiff's 13-count complaint are claims alleging unjust enrichment; money paid by mistake; breach of contract; conversion; breach of fiduciary duty; improper hiring, supervision, and retention; negligent and/or fraudulent misrepresentation; fraudulent suppression; and a claim for "unfair discrimination in rates" in violation of § 27-12-11, Ala. Code (2000). On these claims, Plaintiff asserts that he suffered economic harm and is entitled to recover the value of the premiums he paid on his policies that were allegedly in excess of what similarly situated white individuals paid for the same coverage, see Complaint ¶¶ 24, 27, 31, 34, 50, 60, 68, 75, 89. He also asserts that he is entitled to recover compensatory damages for mental anguish, id. ¶¶ 80, 84; punitive damages, id. ¶¶ 34, 46, 50, 60, 68, 76, 80, 84, 89; as well as interest, costs, and attorneys' fees. However, Plaintiff's complaint further expressly limits his recovery demand thus: "Plaintiff makes no claim for compensatory or punitive damages in this lawsuit which exceed $74,000, exclusive of interests and costs. For all claims included herein, Plaintiff claims an amount not to exceed $74,000, exclusive of interest and costs . . . ." Complaint ¶ 8.

## II. DISCUSSION

The defendant in an action brought in state court generally may remove an action to federal court if the case originally could have been brought in federal court. 28 U.S.C. § 1441(a). However, because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly, with all doubts about jurisdiction resolved in favor of remand to

state court. University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). Federal courts are courts of limited jurisdiction, as they may hear only cases that the Constitution or Congress has authorized. See, e.g., Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (citing cases). A federal court has jurisdiction over cases involving parties who are citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). But 28 U.S.C. § 1447(c) provides that where a case is removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

"While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still master of his own claim." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, where a plaintiff's complaint specifically requests an amount of damages that is less than the diversity jurisdictional prerequisite, that claimed amount is entitled to deference, and the removing party bears the "heavy" burden to prove "to a legal certainty that plaintiff's claim must exceed [$75,000]².<sup>_</sup>" Id. This standard is essentially the converse of the test set forth in St. Paul Indemnity Corp. v. Red Cab Co., 303 U.S. 283, 288-89 (1938), see Burns, 31 F.3d at 1094-95, wherein the Supreme Court held that a plaintiff who files his complaint in federal court demanding a sum in excess of the required amount in controversy is entitled to remain in federal court where the amount is pled in "good faith," which the Court clarified meant that "[i]t must appear to a legal certainty

---

²When 28 U.S.C. § 1332 was applied to the facts in Burns, the statute provided that the amount in controversy in diversity cases had to exceed $50,000, exclusive of interest and costs. The statute has since been amended to raise the requisite amount in controversy to in excess of $75,000, exclusive of interest and costs.

that the claim is really for less than the jurisdictional amount to justify dismissal." See also Jones v. Landry, 387 F.2d 102, 104 (5th Cir. 1967)[3] ("The test of the plaintiff's 'good faith' is not his subjective state of mind but a very strict objective standard. . . . [T]here is but one test; good faith and legal certainty are equivalents rather than two separate tests.")

While the "legal certainty" test articulated in Burns is a "strict" one, 31 F.3d at 1095, it does not mean that a removing defendant cannot ever remain in federal court where a plaintiff's complaint demands less than $75,000. Id. at 1095-96. Because the amount claimed in a plaintiff's complaint is entitled to deference, a removing defendant is required to prove that, "if plaintiff prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [$75,000]." Id. at 1096. (Footnote added). This "standard is an objective one; plaintiff's or plaintiff's counsel's subjective intent in drafting the prayer is not the true issue." Id. at 1095-96. (footnote omitted). See also Landry, supra.

In the instant case, Plaintiff contends that this case is due to be remanded to state court because American General has failed to show that the amount in controversy requirement is met. The complaint demands an amount of damages from the Defendants not to exceed $74,000, which is below the amount in controversy required by 28 U.S.C. § 1332. Thus, under Burns American General must prove "to a legal certainty" that Plaintiff's claims must be worth more than $75,000. In other words, American General must show that if Plaintiff prevails on

---

[3] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

liability, an award of $75,000 or less would be "outside the range of permissible awards."

In its notice of removal, American General argues that it has shown that the amount in controversy is satisfied because Plaintiff's ultimate recovery is not limited under Alabama law to the amount demanded in the complaint, see Ala. R. Civ. P. 54(c), and Plaintiff has further refused to stipulate that he would not ever seek or accept more than $75,000 in damages. However, those very arguments were raised in Burns and rejected as insufficient to show to a legal certainty that the amount in controversy was met. See 31 F.3d at 1094, 1097 & n.13. See also Emma Reynolds v. American Gen. Life & Accident Ins. Co., CV 01-BU-0382 (N.D. Ala. Feb. 14, 2001) (unpublished memorandum opinion & order, Doc. No. 6). Thus, it is clear that American General has not at this time met its burden to show to a legal certainty that an award below the jurisdictional amount would be outside the range of legally permissible awards.

That does not wholly dispose of the issue, however. American General has suggested that it should be given time to perform limited discovery before this Court makes a decision on the remand question. In particular, American General has sought leave to perform limited discovery into whether the amount in controversy is met and for 30 days in which it would presumably submit such evidence after it was gathered. In its motion for leave to perform discovery, American General states that it will first request admissions from Plaintiff as to the following:

> 1. Admit that your total damages in this case, including all compensatory and punitive damages, against all defendants do not exceed $75,000, exclusive of interest and costs.

    2. Admit that you will not accept a jury award in this case exceeding $75,000 for total damages, exclusive of interest and costs.

    3. Admit that you irrevocably stipulate to accept no more than $75,000 for total damages, including both compensatory and punitive damages, collectively from all Defendants in any trial of this case or any settlement of this case, exclusive of interest and costs.

    4. Admit that you sought punitive damages in the complaint.

    5. Admit that you sought compensatory damages in the complaint.

    6. Admit that you sought damages for mental anguish or emotional distress in the complaint.

Exh. D to American General's Motion for Jurisdictional Discovery. American General also states that it will take Plaintiff's deposition to inquire into issues relating to the amount in controversy, requesting that Plaintiff produce at the deposition all documents which may relate to such issues. See Exh. E to American General's Motion for Jurisdictional Discovery. And finally, American General states that it would propound interrogatories to Plaintiff, requiring that he (1) itemize all compensatory damages he seeks, aside from those for mental anguish; (2) separately itemize all damages for mental anguish; and (3) itemize all punitive damages that he seeks. Accordingly, the Court turns to the question of whether American General has demonstrated that it should be allowed to engage in such discovery before the Court rules on Plaintiff's motion to remand.

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown

that the amount stated in the complaint is not claimed in good faith.' "[4] <u>Horton v. Liberty Mut. Ins. Co.</u>, 367 U.S. 348, 353 (1961). See also <u>Etheridge v. Piper Aircraft Corp.</u>, 559 F.2d 1027, 1028 (5th Cir. 1977) ("For purposes of determining the existence of jurisdiction, plaintiff's complaint is the primary source.") The Eleventh Circuit has stated that "[w]hile it is undoubtedly best to include all relevant evidence in the petition for removal," a district court may consider post-removal evidence in assessing the propriety of removal. <u>Sierminski v. Transouth Financial Corp.</u>, 216 F.3d 945, 949 (11th Cir. 2000). See also <u>Fowler v. Safeco Ins. Co. of America</u>, 915 F.2d 616, 617 (11th Cir. 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal" (citing <u>B., Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. Unit A 1981))). However, <u>Sierminski</u> does not <u>compel</u> the consideration of post-removal evidence, particularly under the "legal certainty" standard,[5] and as there is no statutory direction for

---

[4] As indicated previously, the assessment of a plaintiff's "good faith" actually involves an objective inquiry into whether or not it is shown "to a legal certainty" that the plaintiff's claims either must be less than the jurisdictional amount, where plaintiff has originally filed in federal court, <u>Red Cab Co.</u>; <u>Landry</u>, <u>supra</u>, or must be more than the jurisdictional amount, where defendant has removed to federal court. <u>Burns</u>, <u>supra</u>.

[5] Strictly speaking, <u>Sierminski</u> concerns only the propriety of a district court's consideration of evidence submitted post-removal in a case where the plaintiff's state court complaint did not demand any particular amount of damages, as contrasted with Plaintiff's demand in this case for a specific amount below $75,000. See 216 F.3d at 947-48. Under Eleventh Circuit precedent, where the damages are unspecified, a removing defendant need not prove to a legal certainty that the plaintiff's claims must exceed the jurisdictional amount; rather, he bears a lighter burden to prove merely by a "preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1357 (11th Cir. 1996), overruled on other grounds by <u>Office Depot v. Cohen</u>, 204 F.3d 1069 (11th Cir. 2000). Such an inquiry would generally seem more amenable to factual proof and thus more suited for consideration of post-removal evidence outside the pleadings than the stricter "legal certainty" test articulated in <u>Burns</u>. Nonetheless, it would appear that a court may also properly consider post-removal evidence where the burden to

procedure upon ascertaining the amount in controversy for purposes of jurisdiction, the mode of its determination is generally left to the trial court. See Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 667 (5th Cir. 1971). Of course, when a district court determines whether diversity jurisdiction exists, it examines whether, at the time of removal, the amount in controversy requirement is met. Poore v. American-Amicable Life Ins. Co. of Texas, 218 F.3d 1287, 1291 (11th Cir. 2000); Sierminski, 216 F.3d at 947. Therefore, "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of removal, and any post-petition affidavits are allowable only if relevant to that period of time." Sierminski, 216 F.3d at 949 (quoting Allen v. R.H. Oil Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).

Examining the discovery American General proposes in its motion, it does not appear that American General fully appreciates the nature or the practical difficulty of what it must prove to meet its burden under the "legal certainty" test articulated in Burns. In its first three requests for admissions, American General would seek to have Plaintiff admit that he does not and will not seek or accept any damages in excess of the jurisdictional amount. However, the Court has already explained above that even if Plaintiff were to refuse to make such stipulations, that

---

prove jurisdiction involves the "legal certainty" test. See Sierminski, 216 F.3d at 947-48 (after setting forth the removing party's varying burdens under Tapscott and Burns to prove the amount in controversy is met, depending upon whether the plaintiff's complaint demands a specified amount, the court stated that the issue of the case was "what types of proof are appropriate for the district court to consider in determining whether [a removing defendant] has satisfied [its] burden" (emphasis original); cf. Red Cab, 303 U.S. at 289 ("But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." (emphasis added)).

is not sufficient for American General to meet its burden under <u>Burns</u>. In other words, American General is "barking up the wrong tree" by asking for such admissions. <u>Willie Mae Scott v. American General Life & Accident Ins. Co.</u>, CV 00-N-3603-W (N.D. Ala. Feb. 6, 2001) (unpublished order, Doc. No. 21).

American General's next three requests for admissions would have Plaintiff admit that he seeks punitive damages and compensatory damages, including mental anguish. American General's interrogatories would similarly have Plaintiff itemize his demands for such damages. As to the requests for admission, the Court concludes they are pointless. It is clear from the face of Plaintiff's complaint that he has, in fact, demanded such damages, in a total amount not to exceed $74,000. But a showing by American General that Plaintiff has demanded compensatory damages for mental anguish and punitive damages simply does not prove, under the facts of this case, that, if Plaintiff were to prevail on his claims, an award below the jurisdictional amount would be outside the range of legally permissible awards. The test of legal certainty does not involve an inquiry into the mere probability that Plaintiff might recover an amount above the jurisdictional prerequisite. See <u>Warth v. State Farm Fire & Cas. Co.</u>, 792 F.Supp. 101, 103 (M.D. Fla. 1992) ("The fact that Plaintiffs could receive damages in excess of [the jurisdictional amount] is merely a prediction, not a legal certainty"); cf. <u>Etheridge</u>, 559 F.2d at 1028 ("It may appear that it is unlikely that the plaintiff will be able to recover the amount claimed, but the improbability of recovery is not sufficient basis for the denial of jurisdiction [under the legal certainty test]") (in the context of original federal jurisdiction). Rather, the question is whether, given Plaintiff's allegations, if he were to prevail on his claims, would an award below the jurisdictional minimum

be "outside the range of permissible awards." Burns, 31 F.3d at 1096. In other words, would such an award be permitted to stand as a matter of law. Cf. Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1272 (11th Cir. 2000) (stating that under the legal certainty test, "[o]nce it is clear that as a matter of law the claim is for less than [$75,000], the [court] is required to dismiss" (quoting Burns v. Anderson, 502 F.2d 970, 972 (5th Cir. 1974)); Payne v. State Farm Mut. Auto. Ins. Co., 266 F.2d 63, 64-65 (5th Cir. 1959) ("If from the nature of the case as stated in the petition there could not legally be a judgment for an amount necessary to the jurisdiction, jurisdiction cannot attach even though the damages be laid . . . at a sum larger than the jurisdictional amount. Therefore, while the prayer here is for an amount far above the jurisdictional requirement, this court must examine whether it is legally possible for plaintiff to recover a sum equal to the jurisdictional amount upon the cause of action alleged in the petition") (quoting Colorado Life Co. v. Steele, 95 F.2d 535, 536 (8th Cir. 1938)); Matthiesen v. Northwestern Mut. Ins. Co., 286 F.2d 775, 777 (5th Cir. 1961) ("However, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved, for jurisdictional purposes, in favor of the subjective good faith of the plaintiff. " (quoting McDonald v. Patton, 240 F.2d 424, 425 (4th Cir. 1957)) (each dealing with legal certainty in the context of original federal jurisdiction). But see Jackson v. American Bankers Ins. Co. of Fla., 976 F.Supp. 1450 (S.D. Ala. 1997) (holding that the removing defendants had met their burden to show to a legal certainty that the amount in controversy was satisfied where experts testified that the value of the case exceeded $75,000).

"The determination of whether the requisite amount in controversy exists is

a federal question; however, [s]tate law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce." Broughton v. Florida Intern. Underwriters, Inc., 139 F.3d 861, 863 (11th Cir. 1998) (quoting Duderwicz v. Sweetwater Sav. Ass'n, 595 F.2d 1008, 1012 (5th Cir. 1979) (internal quotations and citation omitted)). This includes applying state law rules regarding the applicable measure of damages and the availability of special and punitive damages. See, e.g., Ryan v. State Farm Mut. Auto. Ins. Co., 934 F.2d 276, 277 (11th Cir. 1991); Jagiella v. Jagiella, 647 F.2d 561, 563-64 & n.10 (5th Cir. June 1981); Etheridge, 559 F.2d at 1028-29); Spires v. North Am. Acceptance Corp., 383 F.2d 745, 746-47 (5th Cir. 1967).

The only apparent liquidated damages that Plaintiff claims in his complaint concern the value, plus interest, of the premiums he allegedly paid in excess of those paid by similarly situated white individuals for the same amount of coverage. The Court would acknowledge that where a plaintiff makes a contract-based claim and it is shown that he would, as a matter of law, be entitled to a fixed amount in excess of the jurisdictional amount upon prevailing, then such a claim would be sufficient to confer removal jurisdiction. See Payne v. State Farm Mut. Auto. Ins. Co., 266 F.2d 63, 64 (5th Cir. 1959), ("If there is one situation where the amount of a claim can be determined with legal certainty, it is in a case when a claim is asserted on an insurance policy limiting liability."). A similar situation would be presented where a plaintiff brings a tort claim for physical injuries and seeks to recover the value of medical bills that exceed the jurisdictional amount. In this case, however, American General has made no attempt to establish a valuation of Plaintiff's liquidated damages relating to the value of the excess premiums he allegedly paid. Further, the

Court would note that, because Plaintiff's complaint identifies the allegedly discriminatory policies at issue in this case by number and year of purchase, it would seem that the ability to calculate, at least with some degree of exactitude, the value of his claims regarding liquidated damages would be within the particular power of American General, without having to conduct the discovery it proposes. Indeed, it would seem that, if anyone is able to ascertain this information, it would be American General rather then Plaintiff. This state of affairs weighs against affording American General additional time to conduct discovery and to submit further evidence.

Nor does the Court find the fact that Plaintiff has sought punitive damages to be particularly significant, within the confines of a legal certainty analysis. Under Alabama law, even if Plaintiff were to prevail on all claims upon which punitive damages might be awarded, he has no legal entitlement to recover them at all, as their imposition is discretionary with the jury. See, e.g., Smith v. Atkinson, 771 So.2d 429, 438 (Ala. 2000). Therefore, even if Plaintiff were to prevail on all claims, if the jury awarded him no punitive damages, he would have no legal cause to complain. Accordingly, it cannot be said that Plaintiff's demand for punitive damages, or any speculative itemization he might provide regarding such damages, indicates that his claims must, to a legal certainty, exceed $75,000.

Similar problems inhere with respect to American General's proposed discovery inquiries into the issue of mental anguish. Under Alabama law, where liability is proven, the verdict must include an amount at least as high as the uncontradicted special damages, as well as an amount sufficient to make any compensation for pain and mental suffering. Shannon v. Miller, 644 So. 2d 9, 10

to 644 So.2d 9, 11 (Ala. Civ. App. 1994). However, "[t]here is no fixed standard for determining the amount of compensatory damages a jury may award for mental anguish." <u>Delchamps, Inc. v. Bryant</u>, 738 So. 2d 824, 837 (Ala. 1999). "Damages for physical pain and mental anguish are in large measure discretionary and the rule is not to reverse on that account unless the amount is so excessive or inadequate as to indicate prejudice, passion, partiality or corruption . . . ." <u>Pizitz Dry Goods Co. v. Harris</u>, 270 Ala. 390, 396, 118 So. 2d 727, 731-32 (1960). Thus, even though Plaintiff seeks some unliquidated measure of damages for mental anguish, it cannot not be said from Plaintiff's allegations in this case that, if he were to prevail on his claims for which such damages are available, that he must, as a matter of law, recover an amount above the jurisdictional prerequisite. This is particularly true where, as here, a plaintiff's allegations are that he was entirely unaware of American General's allegedly racially discriminatory practices until recently, and there is no suggestion that he suffered any serious physical injury or pain as a result of American General's alleged wrongdoing. Compare, e.g., <u>Coca-Cola Bottling Co., Montgomery v. Parker</u>, 451 So. 2d 786 (Ala. 1984) with <u>McCain v. Redman Homes, Inc.</u>, 387 So. 2d 809 (Ala. 1980); <u>Bibb v. Nelson, Ala.</u>, 379 So. 2d 1254 (Ala. 1980).

American General argues that, by demanding a specific amount of damages below the federal jurisdictional prerequisite, Plaintiff is "dancing around the amount-in-controversy requirement" of the federal courts to prevent removal. Notice of Removal ¶11. Even if this might be so as an empirical matter, <u>Burns</u> teaches that this Court is generally not permitted to indulge in such an assumption. Indeed, the legal certainty test is unconcerned with the subjective intent of Plaintiff or his counsel, except insofar as it can be objectively shown that Plaintiff must

recover an amount above $75,000, exclusive of interest or costs, if he prevails on his claims. The Eleventh Circuit's adoption of the strict test of legal certainty to removed cases where the plaintiff has requested a specific amount below the jurisdictional prerequisite certainly increases the likelihood that plaintiffs may file their claims in state court without fear of removal jurisdiction being sustained. However, the flipside of such complaints have been often heard from defendants who believe that plaintiffs overestimate the value of their state law claims in order to <u>confer</u> federal diversity jurisdiction. Nonetheless, courts routinely sustain such original jurisdiction notwithstanding the clear improbability of a recovery above the jurisdictional amount, unless it appears that it is certain that the plaintiff cannot legally recover the requisite amount. <u>Burns</u> implies that the same type of strict standard applies on removal where the plaintiff's state-court complaint requests an amount below the jurisdictional minimum, except that the removing party must show to a legal certainty that the plaintiff will recover an amount above the jurisdictional amount if he prevails. Indeed, the interests in comity and federalism underlying the directive that removal statutes are to be viewed narrowly, with doubts construed against removal, suggest that the legal certainty test should not be any less strict when testing jurisdiction upon removal.

    While a federal court should rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases, preliminary jurisdictional determinations should neither unduly delay, nor unfairly deprive a party from, determination of the controversy on the merits. <u>Coventry Sewage Associates v. Dworkin Realty Co.</u>, 71 F.3d 1, 4 (1st Cir. 1995). Thus, the determination of whether the case belongs in federal or state court "ought to be made with relative dispatch so that the parties

may proceed to resolution of the dispute's merits." Id. Regardless of whether the party asserting the existence of federal diversity jurisdiction is a plaintiff who filed his complaint in federal court or a removing defendant, the "legal certainty" test reflects the concerns of federal courts regarding the efficient use of their own limited resources and attempts to avoid time-consuming threshold jurisdictional issues that do not go to the merits. See 14B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 p. 16-17 (3rd ed. 1998).

American General's arguments in this case and its proposed discovery for showing that the amount in controversy is met fail to confront what it has to show to prove the existence of jurisdiction. American General has not attempted to submit anything indicating what the value of Plaintiff's claims for liquidated damages might be, and its other proposed discovery, which seems to focus primarily on the availability of punitive damages and mental anguish, simply is not probative to show that Plaintiff must, as a matter of law, recover more than $75,000 if he prevails on his claims. The Court does not mean to suggest that it would sustain removal diversity jurisdiction only in cases where it can be shown that the Plaintiff has suffered liquidated damages in an amount above the statutory minimum. However, the Court does not intend to have a mini-trial on the merits of a plaintiff's claims to determine the threshold amount-in-controversy jurisdictional question, which merely delays the adjudication on this case on its merits. Cf. Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc., 417 F.2d 129, 131 (5th Cir. 1969) ("When the issue of jurisdictional amount is intertwined with the merits of the case, courts should be careful not to decide the merits, under the guise of determining jurisdiction, without the ordinary incidents of a trial." (internal

quotation marks and citation omitted)). Given the facts of this case, and the nature of American General's proposed discovery, the Court sees no reason to stay this action or otherwise delay its decision on the remand issue. Because American General has failed to prove to a legal certainty that the amount in controversy is satisfied, the Court concludes that Plaintiff's motion to remand is due to be granted.

### III. CONCLUSION

Based on the foregoing, the Court concludes as follows: American General's motion to allow it to conduct limited discovery into the amount in controversy (Doc. No. 3) is due to be DENIED; its order for a stay pending a decision on the motion to reassign the case or to allow it 30 days to submit further evidence on the amount in controversy (Doc. No. 5) is due to be DENIED; Plaintiff's motion to remand the case to the Clay County, Alabama, Circuit Court (Doc. No. 6) is due to be GRANTED, as the Court concludes that it lacks subject matter jurisdiction. Because the case is being remanded, the Court declines to rule upon American General's pending motion to dismiss or for a more definite statement (Doc. No. 2), which shall be terminated by the Clerk of this Court. A separate order will be entered.

**IT IS SO ORDERED**, this 28th day of February, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE